```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

| | |
|---|---|
| **NATIONAL ASSOCIATION OF HOME BUILDERS,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 10-832 (GK) |
| | : |
| **KEN SALAZAR, Secretary of the Interior, and U.S. FISH AND WILDLIFE SERVICE,** | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

Plaintiff National Association of Home Builders ("NAHB") brings this suit against Defendants, Secretary of the Interior Ken Salazar (the "Secretary") and the U.S. Fish and Wildlife Service ("FWS"), for declaratory and injunctive relief, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 7061 et seq., and the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g). NAHB challenges the validity of a memorandum drafted by the Solicitor of the Department of the Interior that interprets a phrase in the definitions of "endangered species" and "threatened species" under the ESA.

This matter is now before the Court on Plaintiff's Request for Entry of Final Judgment ("Pl.'s Request") [Dkt. No. 21], and Defendants' Second Motion to Dismiss ("Defs.' Mot.") [Dkt. No. 22]. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, and for the reasons stated below, the

Court finds that NAHB's claims are now moot, and therefore Plaintiff's Request for Entry of Final Judgment is **denied** and Defendants' Second Motion to Dismiss is **granted.**

I.  **BACKGROUND**[1]

The ESA is the "'most comprehensive legislation for the preservation of endangered species ever enacted by any nation.'" Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 698 (1995) (quoting Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978)). When Congress enacted the statute in 1973, it intended to bring about the "better safeguarding, for the benefit of all citizens, [of] the Nation's heritage in fish, wildlife, and plants." 16 U.S.C. § 1531(a)(5). Having found that a number of species of fish, wildlife, and plants in the United States had become extinct "as a consequence of economic growth and development untempered by adequate concern and conservation," Congress enacted the ESA in order to "provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species." Id. §§ 1531(a)(1), (b).

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, unless otherwise noted, the facts set forth herein are taken from the Complaint.

The ESA imposes certain responsibilities on the Secretary of the Interior, who has delegated day-to-day authority for its implementation to FWS. See 16 U.S.C. § 1531(b); 50 C.F.R. § 402.01(b). The ESA's protection of a species and its habitat is triggered only when FWS "lists" a species in danger of becoming extinct as either "endangered" or "threatened." See 16 U.S.C. § 1533.[2]

A species is "endangered" when it is in "danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).[3] On March 16, 2007, the then Solicitor for the Department of the Interior, David Longly Bernhardt, issued a memorandum defining "a significant portion of its range." Mem. M-37013 (March 16, 2007) (the "SPR Memorandum") [Dkt. No. 9-2]. According to NAHB, the SPR Memorandum improperly "allows the Secretary to list a population of a species as endangered or threatened under the ESA irrespective of whether that population consists of a species of vertebrate fish or wildlife and whether it qualifies as a distinct population segment" under previous policy. Compl. ¶ 38 [Dkt. No. 1].

---

[2] The Act defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." Id. § 1532(16).

[3] When a species is "likely to become an endangered species within the foreseeable future," the statute defines it as "threatened." Id. § 1532(20).

3

On May 19, 2010, NAHB filed its Complaint. It alleges that Defendants have violated both the APA and ESA by failing to issue a notice of proposed rulemaking in the Federal Register and failing to provide interested persons an opportunity to comment before publishing the SPR Memorandum. NAHB also alleges that the interpretation of a "significant portion of its range" embodied in the SPR memorandum was in excess of the Secretary's statutory authority and was arbitrary, capricious, or otherwise not in accordance with law. NAHB seeks a declaratory judgment that Defendants' issuance of the SPR Memorandum violated the APA and ESA. NAHB further requests an order vacating the Memorandum and enjoining Defendants from applying its interpretation when determining a species' eligibility for listing as endangered or threatened.

This case is not the only one in which the SPR Memorandum has played a central role. According to NAHB, FWS has applied the SPR Memorandum more than twenty-five times when considering whether the range of a species or a portion of its range should be listed or delisted under the ESA. Pl.'s Opp'n 20 [Dkt. No. 25]. As a result of lawsuits challenging these decisions, two district courts have now rejected the SPR Memorandum's interpretation, as applied to specific species. Defenders of Wildlife v. Salazar, 729 F. Supp. 2d 1207, 1218-19 (D. Mont. 2010); WildEarth Guardians v. Salazar, No. CV-09-00574-PHX-FJM, 2010 WL 3895682, at *3-6 (D. Ariz. Sept. 30,

2010). The SPR Memorandum is also involved in two other cases, not including this one. Center for Native Ecosystems v. Salazar, No. 09-cv-01463 (JLK) (D. Colo.);[4] Center for Biological Diversity v. Salazar, No. 09-cv-2233 (PLF) (D.D.C.).

In response to these lawsuits, the current Solicitor of the Department of the Interior, Hilary C. Tompkins, announced, on May 4, 2011, that she was withdrawing the SPR Memorandum. Mem. M-37024 (May 4, 2011) (the "Withdrawal Memorandum"), Ex. B to Pl.'s Request [Dkt. No. 21-1]. In the Withdrawal Memorandum, the Solicitor stated that the SPR Memorandum was withdrawn in order "to facilitate FWS's review of the SPR phrase and issuance of new guidance." Id.

On May 5, 2011, the parties jointly informed the Court that the SPR Memorandum had been withdrawn and asked the Court to cancel a scheduled motion hearing on Defendants' first Motion to Dismiss. Notice of Withdrawal of Challenged Memorandum [Dkt. No. 17]. After nearly two months of negotiation, the parties informed the Court that they could not reach a settlement and that they would file renewed dispositive motions. Stipulated Briefing Schedule and Proposed Order (July 1, 2011) [Dkt. No. 19].

On July 7, 2011, NAHB filed its Request for Entry of Final Judgment. On July 11, 2011, Defendants filed their second Motion to

---

[4] On July 7, 2011, Center for Native Ecosystems was remanded to FWS after the SPR Memorandum was withdrawn and the species in question was "delisted" as threatened. —F. Supp. 2d—, 2011 WL 2646515, at *6 (D. Colo. July 7, 2011).

Dismiss. On August 5, 2011, Defendants filed an Opposition to NAHB's Request for Final Judgment ("Defs.' Opp'n") [Dkt. No. 23]. On August 18, NAHB filed both a Reply to Defendants' Opposition ("Pl.'s Reply") [Dkt. No. 24] and an Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") [Dkt. No. 25]. Finally, on September 6, Defendants filed a Reply to NAHB's Opposition to the Motion to Dismiss ("Defs.' Reply") [Dkt. No. 26].

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. U.S., 531 F.3d 930, 932 (D.C. Cir. 2008). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on its own resolution of disputed facts. Id.

## III. ANALYSIS

Although NAHB seeks an immediate judgment on the merits, the threshold and dispositive question now before the Court is whether

6

the withdrawal of the SPR Memorandum moots NAHB's claims. Defendants argue that, because they have withdrawn the SPR Memorandum and promised to provide a period for notice and comment before issuing any new policy, "there is no longer any relief for the Court to grant even if the plaintiff were to prevail on its claim." Defs.' Mot. 6. Therefore, "[t]here is no longer a live controversy in this case." Id.

"The mootness doctrine, deriving from Article III, limits federal courts to deciding 'actual, ongoing controversies.'" Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990), quoting Honig v. Doe, 484 U.S. 305, 317 (1988). Federal courts have "no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).

Therefore, "[i]f it becomes 'impossible for the court to grant any effectual relief whatever to a prevailing party' on a particular claim, that claim must be dismissed." Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 79 (D.C. Cir. 2011) (quoting Church of Scientology, 506 U.S. at 12). "Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect

the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Clark, 915 F.2d at 701 (quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)).

NAHB does not contest that the withdrawal of the SPR Memorandum comes within the ambit of the mootness doctrine. Rather, NAHB contends that its claims are saved by the voluntary cessation doctrine, which provides that voluntary cessation of allegedly illegal conduct typically does not moot a case. Pl.'s Opp'n 11.

NAHB is correct that, "[a]s a general rule, a defendant's 'voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case.'" Am. Bar Ass'n v. FTC, 636 F.3d 641, 648 (D.C. Cir. 2011) (quoting Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). However, a court may find that a defendant's voluntary conduct has mooted the controversy if "(1) there is no reasonable expectation that the conduct will recur and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Motor & Equip. Mfrs. Ass'n v. Nichols, 142 F.3d 449, 459 (D.C. Cir. 1998) (quoting Cnty. of Los Angeles v. Davis, 440 U.S. 625 (1979)); see also Nat'l Black Police Ass'n, et al. v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997)).

In short, the parties disagree on two issues: (1) whether there is a reasonable expectation that Defendants will revive the

8

SPR Memorandum and (2) whether interim events have eradicated the effects of the SPR Memorandum. Each will be addressed in turn.

### A. Expectation that Conduct Will Recur

As an initial matter, the parties disagree about the burden the Defendants must bear in demonstrating that the challenged conduct is unlikely to recur. NAHB emphasizes that "a defendant that voluntarily ceases activities challenged by the plaintiff, and then moves to dismiss on the grounds of mootness, bears a 'heavy burden' of proof to demonstrate that the challenged action will not happen again." Pl.'s Opp'n 14 (quoting Cmty. Hous. Trust v. Dep't of Cons. and Reg. Affairs, 257 F. Supp. 2d 208, 218 (D.D.C. 2003)). Defendants, on the other hand, urge the Court to adopt the Eleventh Circuit's rule that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." Troiano v. Supervisor of Elections in Palm Beach, 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis in original).[5]

---

[5] The Fifth and Seventh Circuits have employed similar presumptions. See Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009) ("courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude . . . . Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."); Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 930 (7th Cir. 2003) ("we have repeatedly held that the complete repeal of a challenged law renders a case moot, unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar.").

Our own Court of Appeals has not spoken directly to this issue. However, even in the absence of a formal presumption, it is clear from precedent in this Circuit that Defendants have carried their burden. In particular, our Court of Appeals has held that "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted." Nat'l Black Police Ass'n, 108 F.3d at 349.

NAHB argues, in substance, that because Defendants have not unequivocally foreclosed developing a similar policy in the future, and because Defendants have not admitted culpability in this proceeding, the Court should find that there is a reasonable expectation that the challenged conduct will recur. Pl.'s Opp'n 11-17. But these claims simply fail to satisfy the requirement that there be some "evidence indicating that the challenged law likely will be reenacted." Nat'l Black Police Ass'n, 108 F.3d at 349.

Indeed, not only did the Solicitor withdraw the SPR Memorandum to allow FWS to review the SPR phrase and issue new guidance, but FWS has publicly stated that it "intends to publish shortly, for notice and comment, a proposed joint policy regarding the interpretation and implementation of the phrase 'significant portion of its range.'" Gray Wold Recovery and Delisting Questions and Answers May, 2011, http://www.fws.gov/home/feature/2011/pdf

/Wolf_Actions_Faqs.pdf (last visited Dec. 5, 2011); see also Decl. of Gary Frazier, July 8, 2011, ¶ 7 [Dkt. No. 22-2]. According to Gary Frazier, the Assistant Director for Endangered Species at FWS, a draft of this new "joint SPR Language" was approved by the Department of the Interior on June 7, 2011. Decl. of Gary Frazier, July 8, 2011, ¶ 8. As of July 8, 2011, that draft was being reviewed by the Office of Management and Budget prior to publication in the Federal Register and public review and comment. Id.

In light of this information, and contrary to NAHB's claims, it is quite clear that Defendants have in fact foreclosed the possibility that the alleged procedural violations will recur. Nor is there evidence that the challenged substantive policy will be repromulgated. See Natural Res. Def. Council, Inc. v. United States Nuclear Regulatory Comm'n, 680 F.2d 810, 814 n.8 (D.C. Cir. 1982) (no reasonable expectation that illegal conduct will recur where the defendant repromulgated the challenged rule with notice and comment.). Therefore, there is no reasonable expectation that the conduct will recur. Nat'l Black Police Ass'n, 108 F.3d at 349.

### B. Effects of Withdrawn Policy

NAHB argues that "Defendants also fail to demonstrate that withdrawal of the SPR Decision has completely and irrevocably eradicated the effects of that unlawful decision on NAHB and its members." Pl.'s Opp'n 20. Specifically, NAHB contends that (1)

11

"Defendants have not addressed the effects of withdrawal of the SPR Decision on those prior listing decisions that are currently in force" and (2) "Defendants have not provided any irrevocable assurance or taken any irrevocable action showing that FWS will actually comply with the procedural requirements of the ESA and the APA relating to their interpretation of the SPR Phrase." Id. at 20-21. NAHB's second argument is nothing more than a reworded version of its claims under the 'likely to recur' prong, and therefore can be dismissed for the reasons given above.

NAHB's first argument, namely that Defendants have not revisited all of the prior listing decisions in which they cited the SPR Memorandum, is similarly unconvincing. NAHB has made crystal clear that it brings only a facial challenge to the SPR Memorandum and seeks only declaratory and injunctive relief. Pl.'s Request 7-8. NAHB has not actually alleged that any specific listing or delisting is illegal, nor does the Court have any of the facts or parties in the other SPR Memorandum-related cases before it.[6]

---

[6] In fact, Defendants point out "that the legal interpretation of the SPR phrase affected a judicially reviewable listing determination in only a handful of cases, where the Service determined that there was a significant portion of the range where the threat level was different from that for the rest of the species." Defs.' Reply 7. Each of those rules has already been vacated by court order. Id. (citing Center for Native Ecosystems, —F. Supp. 2d—, 2011 WL 2646515; Defenders of Wildlife, 729 F. Supp. 2d 1207; WildEarth Guardians, 2010 WL 3895682).

Ample precedent demonstrates that a lawsuit seeking declaratory and injunctive relief is moot when the challenged policy is withdrawn. Pl.'s Request 2-3. As our Court of Appeals has stated, "[i]n determining whether a request for declaratory relief has become moot, 'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, <u>of sufficient immediacy and reality to warrant the issuance of a declaratory judgment</u>.'" <u>Conyers v. Reagan</u>, 765 F.2d 1124, 1128 (D.C. Cir. 1985) (quoting <u>Preiser v. Newkirk</u>, 422 U.S. 395, 402 (1975) (emphasis in <u>Preiser</u>)); <u>see also</u> <u>Diffenderfer v. Cent. Baptist Church of Miami, Florida, Inc., et al.</u>, 404 U.S. 412, 414-15 (1972) (issuing a declaratory judgment that a repealed statute is unconstitutional and an injunction against its application would "of course [be] inappropriate now that the statute has been repealed.").

In this case, it is clear that granting the relief sought by NAHB would require issuance an improper advisory opinion. "[W]hat makes [a judicial pronouncement] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion-is in the settling of some dispute <u>which affects the behavior of the defendant towards the plaintiff</u>." <u>Hewitt v. Helms</u>, 482 U.S. 755, 761 (1987) (emphasis in original).

NAHB itself argues that "entry of judgment is necessary to ensure that Defendants follow the procedural requirements of the ESA and APA in [the future SPR decision] administrative proceedings." Pl.'s Request 7-8; Pl.'s Opp'n 22. Such a declaration is not immediately necessary, Conyers, 765 F.2d at 1128, nor would it "affect[] the behavior of the defendant towards the plaintiff." Hewitt, 482 U.S. 755. Simply put, NAHB's request seeks nothing more than an opinion advising Defendants how they should proceed in future SPR language-related proceedings. These claims are not proper for judicial resolution. Theodore Roosevelt Conservation P'ship, 661 F.3d at 79 (refusing to grant relief for claimed violations under one policy by invalidating an unchallenged subsequent and superceding policy); Natural Res. Def. Council, 680 F.2d at 814-15 ("In effect, [plaintiff] seeks a declaration from this court that the initial promulgation of the rule was unlawful, an advisory opinion which federal courts cannot provide.").

Furthermore, other judges in this District confronted with similar facial challenges have held that the withdrawal of a law eradicated its effects. See Daskalea v. Washington Humane Soc'y, 710 F. Supp. 2d 32, 40 (D.D.C. 2010) ("In the context of a facial challenge to a statute, which seeks to have the statute 'declared unconstitutional and enjoined,' this prong is generally satisfied where-as a result of the enactment of the new legislation-the prior version of the statute is 'no longer in force' and there is no

allegation that the pre-amendment provisions 'continue to have any residual effect.'") (quoting Nat'l Black Police Ass'n, 108 F.3d at 350); Van Valin v. Gutierrez, 587 F. Supp. 2d 118, 120-21 (D.D.C. 2008) ("The rescission of the Final Rule has 'completely and irrevocably eradicated' the effects of the alleged violations of the Halibut Act and the APA.").

In sum, by withdrawing the SPR Memorandum, Defendants have indicated that they cannot and will not rely on it in any future listing determination or related lawsuit. Thus, they have already eradicated the effects of the alleged violation, and there is nothing left for the Court to decide. Arizona Pub. Serv. Co. v. EPA, 211 F.3d 1280, 1296 (D.C. Cir. 2000).

**IV.  CONCLUSION**

NAHB brought this suit to strike down a policy and to obtain a period for notice and comment on any replacement. FWS has now withdrawn that policy, has stated that it will reassess it, and has assured NAHB that it will receive its notice and comment period. A court "can hardly order [the agency] to do something that it has already done." Natural Res. Def. Council, 680 F.2d at 814.

For the reasons set forth above, NAHB's Request for Entry of Judgment is **denied** and Defendants' Motion to Dismiss is **granted.**

An Order will issue with this opinion.

|  |  |
|---|---|
| December 8, 2011 | /s/<br>Gladys Kessler<br>United States District Judge |

**Copies to:** counsel of record via ECF